IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TRAVIS RICHARDSON,
          Plaintiff,

v.                                                               Civil Action No. 3:22cv78

DAREN SMITH & THOMAS GRASSO,
          Defendants.

**OPINION**

This matter comes before the Court on Defendants Daren Smith and Thomas Grasso's partial motion to dismiss Plaintiff Travis Richardson's complaint. (ECF No. 2.) On August 1, 2019, Smith and Grasso—two Spotsylvania County deputies—responded to a drug-related emergency at Richardson's house.[1] Instead of offering aid, the deputies interrupted ongoing medical treatment and then verbally assaulted and tased Richardson when he refused to give consent for them to search his home. Further, before leaving the house, Smith seized Richardson's phone. Finally, after arresting Richardson for two misdemeanor offenses related to the possession of drugs and drug paraphernalia, Smith sought two felony charges against Richardson for the sole purpose of influencing a magistrate judge to deny Richardson bail.[2]

---

[1] During the events giving rise to this action, one or both defendants wore an activated body camera.

[2] In Virginia, a deputy may seek charges against an arrestee by bringing him before a judicial officer such as a magistrate judge. If, based on information provided by the deputy, the magistrate judge determines that there is probable cause to charge the arrestee, the magistrate judge will issue a felony warrant of arrest or summons. If the arrestee is not released on a summons, the magistrate judge will determine bail. *See, e.g.*, Va. Code Ann. § 19.2-71 (West 2022); *id.* § 19.2-82 (West 2022); *id.* § 19.2-80 (West 2022). When the arrestee is charged with a felony, a district court will hold a preliminary hearing to determine whether there is probable cause to believe that the arrestee committed the felony charged. If the court finds probable cause for the charged felony, the court will certify the case to the grand jury. If the court finds that probable cause exists for a

On October 20, 2021, Richardson sued Smith and Grasso[3]—in both their individual and official capacities—for assault, battery, and violations of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Counts Five, Six, Three, and One).[4] Richardson also sued Smith for (1) unreasonable search and seizure in violation of the Fourth Amendment (Count Two) and (2) retaliatory prosecution in violation of the First Amendment (Count Four) pursuant to 42 U.S.C. § 1983. The defendants now move to dismiss Richardson's official capacity claims against them, as well as the two individual capacity claims against only Smith. In his response, Richardson abandons his official capacity claims against both defendants (ECF No. 6, at 2); thus, the Court will grant the defendants' motion as to those claims. Richardson's individual capacity claims as to both defendants remain.

Smith moves the Court to dismiss Counts Two and Four because Richardson fails to allege an unlawful search or seizure, Richardson's retaliatory prosecution claim fails under the *Heck* doctrine, and Richardson "fails to allege sufficient facts to show a chilling effect" under the First Amendment. (ECF No. 3, at 10–12.) Because the Court finds that Richardson's complaint plausibly pleads claims for unreasonable search and seizure against Smith, the Court will deny Smith's motion as to Count Two. The Count also finds that the *Heck* doctrine does not bar Richardson's First Amendment claim at this stage of the litigation and that Richardson pleads a cognizable claim for retaliatory prosecution against Smith. Accordingly, the Court will deny

---

misdemeanor, but not the charged felony, the court may reduce the charge to a misdemeanor. *See* Va. Code Ann. § 19.2-186 (West 2022).

[3] Richardson filed suit in the Spotsylvania County Circuit Court. On February 7, 2022, the defendants removed the case to federal court pursuant to 28 U.S.C. § 1446. (ECF No. 1.)

[4] Richardson's complaint erroneously labels two separate claims as Count Four. (*See* ECF No. 1-1, at 13, 14.) For purposes of this Opinion, Count Four is Richardson's First Amendment retaliatory prosecution claim, Count Five is Richardson's assault claim, and Count Six is Richardson's battery claim. (*Id.* at 13–15.)

2

Smith's motion as to Count Four as well.

## I. FACTS ALLEGED IN THE COMPLAINT

On August 1, 2019, Richardson "experienced a drug-related medical emergency." (ECF No. 1-1 ¶ 17.) When one of his family members called for help, fire and rescue personnel responded to his home. Several "[d]eputies from the Spotsylvania County Sheriff's Office, including [the d]efendants, arrived shortly thereafter." (*Id.* ¶ 18.) Medical personnel located Richardson in an upstairs bathroom and began administering medical treatment. Then, the defendants intervened.

First, Deputy Smith "moved into the bathroom doorway," and interrupting communications between medical personnel and Richardson, he asked Richardson "what drugs he was under the influence of." (*Id.* ¶ 20.) Richardson told Smith that he had ingested suboxone,[5] but Smith replied that he did not believe him, asking twice whether Richardson "received his suboxone from a doctor." (*Id.* ¶ 22.) Although Richardson confirmed that he had and provided Smith with his doctor's name, Smith's questions continued. When Smith asked Richardson whether he had a prescription for the suboxone, Richardson "stated that he did, pointed in the direction of his bedroom, and stood up." (*Id.* ¶ 25.) Smith told Richardson to sit down, and Richardson complied. Smith then asked Richardson "where his prescription was located inside the home." (*Id.* ¶ 27.) Richardson told Smith that Smith did not have his permission "to search his home in order to locate it." (*Id.*) Smith replied that he did not need Richardson's permission.

Suddenly, Deputy Grasso "aggressively approached" Richardson, ordered Richardson to "come with [him]," grabbed Richardson by his right arm, and lifted Richardson to his feet. (*Id.* ¶¶ 29–30.) Then, without uttering a verbal command, Grasso tried to bring Richardson's left arm

---

[5] Suboxone is a combination medication commonly used to treat opioid addiction.

3

behind his back. Richardson asked "what [was] going on," and Smith approached him from behind, stating "I'm going to tase you." (*Id.* ¶¶ 31–32.) Smith then tased Richardson in the back for approximately five seconds. Richardson fell to the ground in pain, and Smith struck him on the face with his hand. Smith and Grasso "pushed . . . Richardson onto his stomach, face down on the floor, with his arms behind his back." (*Id.* ¶ 38.) Smith tased Richardson again. Smith told Richardson to put his hands behind his back, and Richardson remained face down on the floor while a third deputy handcuffed him. Grasso shouted, "You're not going to tell us we have no permission to be here. You decided to shoot up? We're here. Do you understand me?" (*Id.* ¶ 43.) When Richardson did not reply, Grasso leaned down and shouted, "Do you understand me?" (*Id.* ¶ 44.) After Grasso stood and proclaimed, "Now, medical will see you," medical personnel resumed treating Richardson. (*Id.* ¶ 45.)

While Richardson sat handcuffed on the floor, Smith called his supervisor, Deputy Chambers, to the scene. Richardson asked Chambers whether he was under arrest, and Chambers told him that he was "not under arrest" but merely "being treated." (*Id.* ¶ 50.) At the scene, Grasso expressed frustration to Chambers and Smith that Richardson had told the deputies to "get out" and said that they "had no right to be there," but neither deputies' body camera captured Richardson saying such things. (*Id.* ¶¶ 61–65.) As the deputies prepared to take Richardson to the hospital, Richardson's phone rang. Smith entered his bedroom, retrieved the phone from where it lay on Richardson's bed, silenced the call, and took the phone. Before riding to the hospital with Richardson, Smith gave the phone to Chambers. Chambers returned it once they arrive at the hospital, telling Smith that he wasn't sure what Smith wanted to do with the phone. In response, Smith took the phone and placed it into an envelope in the trunk of his patrol vehicle.[6]

---

[6] Smith later logged Richardson's phone into evidence and sent it to the Spotsylvania

4

Following the altercation, Smith sought charges against Richardson for "two misdemeanor offenses related to the possession of Schedule III drugs and drug paraphernalia." (*Id.* ¶ 67.) Smith also sought charges for two felony offenses: disarming a law enforcement officer of a stun gun and felony assault of a law enforcement officer. Smith sought the felony charges despite his knowledge that Richardson had not disarmed or assaulted him or Grasso. Before Smith took Richardson to a magistrate judge, Smith told him that he expected that the judge would deny him bail because of the felony charges. The magistrate did, in fact, deny Richardson bail, and Richardson sat in jail for several weeks. Before trial, the Commonwealth's Attorney amended both felonies to the lesser misdemeanor offense of obstruction of justice or resisting arrest without the use of force. The Commonwealth's Attorney later declined to prosecute the obstruction charges altogether and nolle prossed them both.[7]

## II. LEGAL STANDARD

The defendants move to dismiss parts of Richardson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests "the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d

---

County Sheriff's property room, where it remains.

[7] According to Smith, the Commonwealth's Attorney also nolle prossed the two drug-related misdemeanors. On December 3, 2019, however, the Commonwealth indicted Richardson for felony possession stemming from the events on August 1, 2019. Richardson pleaded guilty to that charge on June 22, 2020. (*See* ECF Nos. 3-1, 3-2.) The Court takes judicial notice of Richardson's guilty plea but notes that review of publicly available case information reveals a more complex procedural background than either party suggests. *See, e.g., Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (noting that on review of a Rule 12(b)(6) motion to dismiss, a court may properly take judicial notice of items in the public record)).

5

250, 253 (4th Cir. 2009) (citing *Edwards*, 178 F.3d at 244). But the Court need not embrace bare recitals of the elements of a claim or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim for relief. *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff need not make "detailed factual allegations," but "the well-pleaded facts [must] permit the court to infer more than the mere possibility of misconduct." *Id.* at 679 (quoting *Twombly*, 550 U.S. at 555). Finally, when a Rule 12(b)(6) motion tests "the sufficiency of a civil rights complaint, '[a court] must be especially solicitous of the wrongs alleged.'" *Edwards*, 178 F.3d at 244 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988).

### III. DISCUSSION

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Although § 1983 creates a plaintiff's cause of action, the statute is not "a source of substantive rights"; rather, § 1983 provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, a plaintiff seeking relief pursuant to § 1983 must show both that (1) he was "deprived of a federal statutory or constitutional right"; and (2) "the deprivation was committed under color of state law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Here, Richardson alleges that deputies Smith and Grasso violated his constitutional rights when they responded to a drug-related event at his home. As relevant to this motion, Richardson brings two claims against only Smith.[8] First, he asserts that Smith violated his Fourth Amendment rights when Smith unreasonably searched his bedroom and seized and searched his cellphone. Second, he asserts that Smith violated his First Amendment rights when Smith "retaliated against [him] for his engagement in protected speech [by seeking to charge him] with a number of criminal offenses without probable cause to believe [he] had committed said offenses." (ECF No. 1-1 ¶ 104.) Smith asks the Court to dismiss both claims. First, Smith asserts that Richardson fails to allege an unlawful search or seizure. Second, Smith argues that Richardson's retaliatory prosecution claim fails under the *Heck* doctrine and, alternatively, that Richardson "fails to allege sufficient facts to show a chilling effect." (ECF No. 3, at 10–12.) As explained below, the Court disagrees.

### A. Fourth Amendment Unreasonable Search and Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Although it is now a "'basic principle of Fourth Amendment law . . . that searches and seizures inside a home without a warrant are presumptively unreasonable,'" the rule is "subject to certain

---

[8] Richardson's complaint presents four claims against both Smith and Grasso in their individual and official capacities: excessive force (Count One), retaliation for engagement in free speech (Count Three), assault (Count Five), and battery (Count Six). The complaint also presents two additional claims against Smith in his individual and official capacities: unreasonable search and seizure (Count Two), and retaliatory prosecution (Count Four). The defendants assert that Eleventh Amendment immunity bars all of Richardson's official capacity claims against them for monetary damages. (ECF No. 3, at 5–6.) In response, Richardson requests that the Court "voluntarily dismiss those claims." (ECF No. 6, at 2.) Because Richardson's response indicates an unwillingness to prosecute such claims, the Court accepts his voluntary dismissal and will grant the defendant's motion as to those claims. Accordingly, the Court need not consider whether sovereign immunity bars such relief.

7

reasonable exceptions." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "One well-recognized exception applies when "'the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless entry is objectively reasonable under the Fourth Amendment.'" *Id.* at 460 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (alteration in original)). The Supreme Court has "identified several exigencies that may justify a warrantless [entry and] search of a home." *Id.* As relevant here, the emergency aid exception allows "'officers [to] enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Id.* (quoting *Brigham City*, 547 U.S. at 403).

Richardson construes the scope of this exception narrowly and contends that Smith's authority to enter his home without a warrant and search therein "was premised on the need to provide emergency aid" to Richardson or to "assist emergency medical personnel in carrying out th[at] task." (ECF No. 6, at 4.) Accordingly, he asserts that Smith's entry into his bedroom and Smith's seizure and subsequent search of his cell phone exceeded the limited authority Smith had to be within his home. Smith argues that under the emergency aid exception, he had the authority to enter Richardson's room to search for drugs. Because he had the authority to enter the room, he asserts that it was objectively reasonable for him to do so and thus to see the phone lying in plain view where its incriminating nature as a tool of the drug trade was immediately apparent. Thus, he contends that he lawfully seized the phone. Finally, he says that the complaint fails to allege sufficient facts that Smith searched the cell phone itself.

### *1. Search of the Bedroom*

The parties agree that Richardson's medical emergency granted Smith the authority to enter the home for the purpose of giving aid or otherwise assisting medical personnel in doing so. But

8

the emergency aid exception does not give an officer free rein to search the home of a person under duress. Indeed, "[a]ny search following warrantless entry for emergency reasons . . . must then be limited by the type of emergency involved." *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992) (citing *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977)). Smith argues that because Richardson experienced a drug-related emergency, Smith could reasonably search for "the drugs or items related to the drugs that were ingested in order to have more information to provide effective aid." (ECF No. 3, at 7.) Accordingly, he asserts that the Fourth Amendment allowed his entry into Richardson's bedroom.

The facts alleged in Richardson's complaint do not support Smith's argument. Richardson was not unconscious or otherwise incapable of speaking directly to medical personnel when Smith arrived. To the contrary, Richardson repeatedly told Smith, in the presence of medical personnel, exactly what drug he took. Smith does not point to any facts which support the inference that Richardson could not accurately communicate with medical personnel or faced any danger of misdiagnosis.[9] Thus, an objectively reasonable person in Smith's position would have concluded that searching Smith's bedroom fell outside the scope of rendering emergency aid. Smith's conduct during the encounter bolsters the Court's conclusion that the facts before Smith did not support an objectively reasonable belief that Richardson remained in immediate danger in the absence of Smith's assistance. Indeed, Smith actively interfered with Richardson's treatment by

---

[9] Smith asserts that he entered the bedroom after Richardson "suggested the drugs were in the bedroom." (ECF No. 8, at 2.) This argument mischaracterizes the facts in the complaint, which the Court must accept as true. According to the complaint, Smith asked Richardson if he had *a prescription* for his suboxone, and, in response, Richardson "pointed in the direction of his bedroom." (ECF No. 1-1 ¶ 25.) Smith then asked Richardson where the prescription was located, and Richardson told Smith that he did not give consent for Smith to search his house for it. Further, the complaint makes clear that several minutes elapsed between this exchange and Smith's entry into the room when the phone rang.

9

interrupting medical personnel, repeatedly questioning Richardson about the nature of his prescription, and eventually tasing Richardson. Accordingly, the emergency aid exception did not support Smith's entry into the bedroom. *Cf. Brand*, 556 F.2d at 1318 (finding that drug overdose emergency justified officers' presence in the living room but not in other areas of the house).

### 2. *Seizure of the Phone*

Even if the emergency aid exception would have supported Smith's entry into Richardson's bedroom to search for evidence of what kind of drug Richardson had ingested, Smith admits that he did not actually enter the room for that purpose. Rather, after Richardson's phone rang, Smith walked into the bedroom, found the phone on Richardson's bed, and seized it. Smith argues that the plain-view exception justified that seizure.[10]

"[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." *Id.* at 1109 (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)). In his complaint, Richardson asserts that his "cell phone was not within . . . Smith's plain view at any time during his presence in . . . Richardson's home." (ECF No. 1-1 ¶ 90.) Smith's plain view argument fails under all three prongs. First, the Court must accept Richardson's assertion that Smith could not see the phone from his lawful vantage point. Second, as noted above, even if Smith could have plainly seen the phone once he entered Richardson's bedroom, the Court concludes that Smith did not have a lawful right of access to the bedroom and thus the phone. Under the third prong, Smith argues that Richardson "was suffering from a drug related medical

---

[10] "The 'plain-view' doctrine provides an exception to the warrant requirement for the *seizure* of property, but it does not provide an exception for a search." *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997).

10

emergency and the prescription drug that [Richardson] stated he was on is used to treat opioid addition." (ECF No. 3, at 8.) Accordingly, he says that he made the "reasonable inference that (1) there was illegal drug use and (2) the cell phone could be assistive in providing aid at the hospital." (*Id.*) These arguments fail.

Smith contends that numerous federal courts have acknowledged that cell phones serve as known tools of the "drug trade," and "[a]s a result, [Richardson's] cell phone *may have* been involved in drug trade related behavior." (*Id.* (emphasis added).) Such bald speculation, unsupported by anything but an ongoing medical emergency, does not support an immediate conclusion of the "incriminating character" of Richardson's cell phone. Indeed, as Richardson notes, the facts of this case bear no resemblance to the "numerous" cases Smith cites to.[11] In the cases that involve the plain view doctrine, officers supported the seizure of phones with "additional facts, including specific knowledge . . . that the phone had been used to facilitate the sale of illegal drugs" or the phone's proximity to drugs, scales, and other common tools of the trade. (ECF No. 6, at 6.) Smith identifies no such supporting facts here.

---

[11] (*See* ECF No. 3, at 8 (citing *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1363 (N.D. Ga. 2011) (finding plain view seizure of cell phone lawful when "officers knew that the drug-trafficking organization with which [the defendant] was associated used cell phones to communicate with one another as to deliveries of controlled substances, pick-up of drug proceeds, and distribution to customers"), *aff'd sub nom. United States v. Moreno*, 559 F. App'x 940, 944 (11th Cir. 2014) (declining to review plain view seizure of cell phones because seizure was harmless); *United States v. Portalla*, 496 F.3d 23, 27 (1st Cir. 2007) (discussing role of throwaway cell phones and pagers in drug conspiracy); *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990) (discussing evidence including "pen register activity indicat[ing] phone calls to and from the house with known drug dealers and to cellular phones"); *United States v. Lazcano–Villalobos*, 175 F.3d 838, 844 (10th Cir. 1999) (finding defendant knowingly possessed cocaine after considering factors including: "lack of clothing and luggage en route from an alleged vacation," possession of "large sums of cash . . . and cellular telephones," and defendant's use of a "less direct route for . . . alleged 'emergency' travel") ; *United States v. Sasson*, 62 F.3d 874, 886 (7th Cir. 1995) (describing radios, pagers, cellular phones, and weapons as the "usual 'trappings'" of a person involved in the drug trade).))

Smith also argues that he needed to seize the cell phone because "the cell phone could be assistive in providing aid at the hospital." (ECF No. 3, at 8.) But the facts before the Court undermine this argument. As noted above, Richardson was awake and told medical personnel that he had taken suboxone *before* Smith seized the phone. Further, after Smith gave the phone to his supervisor before traveling to the hospital, the supervisor returned the phone to Smith and said that he was not sure what Smith wanted to do with it. (ECF No. 1-1 ¶ 55.) Finally, Smith put the phone away in the trunk of his car and made no effort to give the phone to medical personnel or to ask Richardson whether the phone contained pertinent information. Accordingly, the plain view exception did not support Smith's seizure of the phone.

### 3. *Search of the Phone*

Finally, Smith argues that Richardson's complaint contains only "one conclusory allegation that [he] search[ed Richardson's] cell phone without a warrant" and fails to provide facts which support that claim. (ECF No. 3, at 9.) In response, Richardson argues that based on Smith's failure to return his phone, the Court may draw a reasonable inference that Smith searched the phone because police "have no reason to keep the item in their custody and possession absent knowledge of—and interest in—its contents." (ECF No. 6, at 8.) Although the Court agrees that the complaint contains few facts to support the claim that Smith unlawfully searched Richardson's phone, the Court concludes that Richardson's civil rights complaint plausibly alleges that Smith searched Richardson's phone and provides Smith with a fair notice of the allegation against him.

The Court thus denies Smith's motion as to Count Two.

### B. *First Amendment Retaliatory Prosecution*

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v.*

12

*Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (alteration in original). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoting *Hartman*, 547 U.S. at 256). "'[A] First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct.'" *Roncales v. County of Henrico*, 451 F. Supp. 3d 480, 495 (E.D. Va. 2020) (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017)).

Smith does not assert that Richardson's comments were not protected speech or Richardson's speech did not cause Smith's conduct. Rather, Smith argues that the *Heck* doctrine bars Richardson's claim.[12] Alternatively, Smith asserts that Richardson "fails to allege sufficient

---

[12] Smith also argues that because he had probable cause to arrest Richardson for misdemeanor possession, Richardson may not challenge Smith's decision to seek charges against him for felony assault and disarming an officer despite having no probable cause. This argument fails.

"[T]he *First* Amendment operates independently of the Fourth and provides different protections. It seeks not to ensure lawful authority to arrest but to protect the freedom of speech." *Nieves*, 139 S. Ct. at 1731 (Gorsuch, J., concurring) (emphasis in original). "[P]laintiffs in retaliatory prosecution cases [must] show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." *Id.* at 1723. Thus, to find that Smith procured the prosecution of the felony charges for assault and disarming an officer, Richardson must establish "'a chain of causation' linking [Smith's] actions with the initiation of criminal proceedings." *Hartman*, 547 U.S. at 262 (quoting *Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000)). Richardson asserts that Smith decided to charge him with the two felonies—despite his knowledge that no conduct supporting the charges had occurred— and then sought such charges from a judicial officer. He asserts that Smith knew he lacked probable cause to support the charges and that footage from Smith's body camera, which captured the entire exchange, will support this contention. From these facts, the Court draws the rational inference that Smith made false statements to support the issuance of felony charges against

13

facts to show a chilling effect" or an "adverse[] effect[]" on his protected speech. (ECF No. 3, at 12; *Roncales*, 451 F. Supp. 3d at 495.)

### *1. The* Heck *Doctrine*

> [I]n order to recover damages for allegedly unconstitutional . . . imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnote omitted). Accordingly, the Fourth Circuit imposes two requirements for *Heck* to bar a § 1983 claim.

> "First, 'a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [the plaintiff's] conviction or sentence.' Second, the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody."

*Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 197 (4th Cir. 2015) (alterations in original) (internal citation omitted). Although Richardson's claim arises out of Smith's actions on August 1, 2019, the Court concludes that they do not necessarily imply the invalidity of his possession conviction.

Smith states that Richardson pleaded guilty to possessing a controlled substance on August 1, 2019. Even if the Court accepted Smith's recitation of the facts surrounding Richardson's plea, his argument fails. Richardson's complaint does not contest the validity of that plea or plead facts that are incompatible with his guilt as to that offense. Rather, Richardson asserts that Smith became angry when Richardson refused to allow Smith to search his house. Because of his anger, Smith sought two felony charges unsupported by probable cause, and as a result, Richardson's criminal record now includes felony charges for assaulting and disarming a law enforcement

---

Richardson.

officer. Furthermore, the record before the Court does not show whether Richardson could have practically sought habeas review for his imprisonment. "Because [the Court] cannot make this determination on the record, [it concludes] that *Heck* does not bar [Richardson's] claim[] for purposes of the defendants' motions to dismiss." *Id.* at 198. Smith may address at summary judgment whether *Heck* bars Richardson's claim.

### 2. *A Chilling Effect*

"[T]he determination as to whether a defendant's actions 'adversely affected [the plaintiff's] First Amendment rights,' . . . is a fact-specific inquiry, which considers" "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Roncales*, 451 F. Supp. 3d at 496, 497 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). "[T]he retaliatory act must be 'more than *de minimis* or trivial.'" *Id.* at 497 (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

Smith argues that because the circumstances of the case involved "exigent, emergency circumstances . . . the only actions that could truly chill speech would be the refusal to provide the required aid or the prevention of the aid." (ECF No. 3, at 12.) Richardson contends that Smith's argument "either ignores—or severely underestimates—the chilling effect created by additional weeks of incarceration." (ECF No. 6, at 11.) The Court agrees and notes that even charges that do not result in a conviction may appear on a person's future background checks and thus follow the person indefinitely. Accordingly, the Court finds that at this juncture, Richardson's complaint presents a claim for retaliatory conduct in violation of the First Amendment.

### IV. **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the defendants'

15


motion. (ECF No. 2.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 27 July 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge